**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| Glen Combs, Sr. et al., | ) | No. CV-10-1492-PHX-SMM |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OF DECISION AND ORDER** |
| State Farm Insurance Companies et al., | ) | |
| Defendants. | ) | |
| | ) | |

Before the Court is the Motion for Summary Judgment (Doc. 43) by State Farm Insurance Companies and State Farm Fire and Casualty Company (collectively "Defendants"). Glenn Combs, Sr. and Brenda C. Combs ("Plaintiffs") have responded, Defendants have replied, and the matter is fully briefed. (Doc. 44.; Docs. 50-53.) After reviewing the briefs, and having determined that oral argument is unnecessary,[1] the Court will deny Defendant's motion in part and grant in part.

## BACKGROUND

### I.    Factual Background

Plaintiffs' home suffered a fire on November 7, 2007, which substantially damaged the home and the majority of its contents. (Doc. 44 ¶¶ 1, 4.) Plaintiffs had a homeowners insurance policy with Defendants. (Id. ¶ 5.) The policy contained provisions purporting to

---

[1]The parties' request for oral argument is denied because the parties have had an adequate opportunity to present their written arguments, and oral argument will not aid the Court's decision. See Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev., 933 F.2d 724, 729 (9th Cir. 1991).

cover the cost of repairing or rebuilding Plaintiffs' home. (Doc. 51-6.) The policy also contained the following language in a provision titled "Building Ordinance or Law" (hereafter "BOL provision"):

> When the dwelling [ . . .] is damaged by a Loss Insured we will pay for the increased cost to repair or rebuild the physically damaged portion of the dwelling caused by enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the loss occurs.

(Doc. 51-6 at 52.) The BOL provision also allowed coverage for repair of undamaged portions of the property necessitated by enforcement of ordinance or law, subject to similar limitations. (Id.)

Plaintiffs immediately notified Defendants of the fire, and Defendants began an investigation into Plaintiffs' claim that same day. (Doc. 44 ¶ 6.) Plaintiffs' claim was subsequently assigned to one of Defendants' claims adjusters, and Plaintiffs retained public adjuster James O'Toole, to represent them in their claim on the policy. (Id. ¶¶ 8, 12.)

The claims adjustment process took a meandering course over several months, with Plaintiffs and Defendants disagreeing over whether the home needed to be completely demolished and rebuilt, or could be repaired. (Id. ¶¶ 13, 15-25.) In June, 2008, Plaintiffs hired Aboval Wood Concepts to conduct an exploratory partial demolition of the home, wherein some fire damaged portions of the home were removed. (Id. ¶ 26.) On July 14, 2008, O'Toole sent Defendants a letter notifying them that Plaintiffs were choosing to exercise their right under the policy to have the amount of loss set by an appraisal. (Id. ¶ 28.)

Pursuant to the policy, Plaintiffs designated their appraiser Joseph Berger, and Defendants designated their appraiser Scott Vivian. (Id. ¶¶ 29-30.) The appraisal was eventually scheduled to occur on February 20, 2009. (Id. ¶ 36.) On that date the appraisal panel deliberated, and the amount of loss was set by the umpire at $198,000 (Actual Cash Value) and $220,000 (Replacement Cost Value). (Id. ¶ 37.) This valuation of the loss exceeded the amount at which Defendants had valued the loss by approximately $40,000, which Defendants subsequently paid to Plaintiffs. (Id. ¶ 39.)

During the claims adjustment process, Plaintiffs had also been receiving payments

1  from Defendants for Additional Living Expenses ("ALE Benefits"). (Doc. 44 ¶ 13.) The ALE

2  Benefits were provided under the policy to cover "the necessary increase in cost you incur

3  to maintain your standard of living" but limited to "the shortest of: (a) the time required to

4  repair or replace the premises; (b) the time required for your household to settle elsewhere;

5  or (c) 24 months." (Doc. 51-6 at 32.) Defendants discontinued Plaintiffs' ALE Benefits

6  approximately two months after the appraisal decision, on or around April 10, 2009. (Doc.

7  44-1.) Plaintiffs' house was not completely rebuilt until on or around August 27, 2009. (Doc.

8  44 ¶ 44.)

9      After Plaintiffs' home was rebuilt, they submitted a claim to Defendants for additional

10  payments under the BOL Provision of the policy. (Doc. 51-2 at 24.)  Defendants eventually

11  denied Plaintiffs' BOL Provision claim. (Id.)

12  **II.    Procedural Background**

13      Plaintiffs initiated the present complaint in the Superior Court of Arizona, Maricopa

14  County. (Doc. 1-4.) Defendants then timely removed to this Court. (Doc. 1.) Jurisdiction is

15  proper based on 28 U.S.C. § 1332, as complete diversity exists between the parties, and the

16  amount in controversy exceeds $75,000. (Doc. 1; Doc. 9.)

17      Plaintiffs' complaint alleges causes of action for breach of contract and breach of the

18  duty of good faith and fair dealing ("bad faith"), and seeks compensatory and punitive

19  damages. (Doc. 1-4.) Plaintiffs allege that Defendants breached the insurance policy contract

20  by failing to pay all amounts due under both the ALE Benefits provision and the BOL

21  Provision. (Id.) Plaintiffs allege also that Defendants committed the tort of bad faith by

22  failing to act reasonably toward Plaintiffs during the claims process. (Id.) Defendants now

23  bring this Motion for Summary Judgment, arguing that no genuine issues of fact exist as to

24  Plaintiffs' claims. (Doc. 43.)

25                              **LEGAL STANDARDS**

26  **I.    Motion for Summary Judgment**

27      A court must grant summary judgment if the pleadings and supporting documents,

28  viewed in the light most favorable to the nonmoving party, "show[] that there is no genuine

1   dispute as to any material fact and the movant is entitled to judgment as a matter of law."
2   Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v.
3   Nev. Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines
4   which facts are material. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also
5   Jesinger, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit
6   under the governing law will properly preclude the entry of summary judgment." Anderson,
7   477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that
8   a reasonable jury could return a verdict for the nonmoving party." Id.; see Jesinger, 24 F.3d
9   at 1130.

10          A principal purpose of summary judgment is "to isolate and dispose of factually
11  unsupported claims." Celotex, 477 U.S. at 323-24. Summary judgment is appropriate against
12  a party who "fails to make a showing sufficient to establish the existence of an element
13  essential to that party's case, and on which that party will bear the burden of proof at trial."
14  Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994). The
15  moving party need not disprove matters on which the opponent has the burden of proof at
16  trial. See Celotex, 477 U.S. at 323-24. The party opposing summary judgment need not
17  produce evidence "in a form that would be admissible at trial in order to avoid summary
18  judgment." Id. at 324. However, the nonmovant must set out specific facts showing a genuine
19  dispute for trial. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574,
20  585-88 (1986); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).

21  **II.    Breach of Contract**

22          In an action for breach of contract, the plaintiff has the burden of proving "the
23  existence of a contract, breach of the contract, and resulting damages." Chartone, Inc. v.
24  Bernini, 207 Ariz. 162, 170, 83 P.3d 1103, 1112 (App. 2004) (citing Thunderbird
25  Metallurgical, Inc. v. Ariz. Testing Lab., 5 Ariz.App. 48, 423 P.2d 124 (1976)).

26          Provisions of insurance contracts should be construed according to their plain and
27  ordinary meaning. National Bank v. St. Paul Fire & Marine Ins. Co., 193 Ariz. 581, 584, 975
28  P.2d 711, 714 (App. 1999). The interpretation of an insurance contract is a question of law,

as is the question of whether the contract's terms are ambiguous. Id. In Arizona, courts must construe a clause which is subject to differing interpretations by "examining the language of the clause, public policy considerations, and the purpose of the transaction as a whole." State Farm Mut. Auto. Ins. Co. v. Wilson, 162 Ariz. 251, 257, 782 P.2d 727, 733 (1989).

"Where the contract language is unclear and can be reasonably construed in more than one sense, an ambiguity is said to exist and such ambiguity will be construed against the insurer." Sparks v. Republic Nat'l Life Ins. Co., 132 Ariz. 529, 534, 647 P.2d 1127, 1132 (1982). To determine whether such an ambiguity exists, the contract language "should be examined from the viewpoint of one not trained in law or in the insurance business." Id. Moreover, an insurance policy must be read as a whole to give "'reasonable and harmonious meaning and effect to all its provisions.'" National Bank, 193 Ariz. at 584, 975 P.2d at 714 (quoting Federal Ins. Co. v. P.A.T. Homes, Inc., 113 Ariz. 136, 139, 547 P.2d 1050, 1053 (1976)).

**III.   Bad Faith**

An insurance contract differs from ordinary commercial contracts in that "'implicit in the contract and the relationship is the insurer's obligation to play fairly with its insured.'" Zilisch v. State Farm Mut. Auto. Ins. Co., 196 Ariz. 234, 237, 995 P.2d 276, 279 (2000) (quoting Rawlings v. Apodaca, 151 Ariz. 149, 154, 726 P.2d 565, 570 (1986)). The insurer is obligated to conduct a prompt and adequate investigation, to act reasonably in evaluating the insured's claim, and to promptly pay a legitimate claim. Zilisch, 196 Ariz. at 238, 995 P.2d at 280.

An insurer commits the tort of bad faith by intentionally and without reasonable basis denying, failing to process, or failing to pay a claim. Noble v. National Am. Life Ins. Co., 128 Ariz. 188, 190, 624 P.2d 866, 868 (1981). To show bad faith on the part of the insurer, the insured must show: (1) that the insurer acted unreasonably toward the insured; and (2) that the insurer "acted *knowing* that it was acting unreasonably *or* acted with such reckless disregard that such knowledge may be imputed to it." Trus Joist Corp. v. Safeco Ins. Co., 153 Ariz. 95, 104, 735 P.2d 125, 134 (App. 1986) (emphasis in original).

1   An insurer "may challenge claims which are fairly debatable," but "its belief in fair

2   debatability 'is a question of fact to be determined by the jury.'" <u>Zilisch</u>, 196 Ariz. at 280,

3   995 P.2d at 279 (citing <u>Sparks</u>, 132 Ariz. at 529, 647 P.2d at 1127) (internal citation omitted).

4   Furthermore, "breach of an express covenant is not a necessary prerequisite to an action for

5   bad faith." <u>Deese v. State Farm Mut. Auto. Ins. Co.</u>, 172 Ariz. 504, 509, 838 P.2d 1265, 1270

6   (1992). Thus, a plaintiff may prevail on a bad faith claim even where they may fail on a

7   breach of contract claim. <u>Id.</u>

8   **IV.    Punitive Damages**

9   To decide whether a defendant has a valid claim for punitive damages, the court must

10  look to the alleged wrongdoer's mental state. <u>Linthicum v. Nationwide Life Ins. Co.</u>, 150

11  Ariz. 326, 330, 723 P.2d 675, 679 (1986). Recovery of punitive damages requires more than

12  the mere commission of a tort. <u>Id.</u> (citing <u>Rawlings</u>, 151 Ariz. at 162, 726 P.2d at 578).

13  Punitive damages are reserved for "only those limited classes of consciously malicious or

14  outrageous acts of misconduct where punishment and deterrence is both paramount and

15  likely to be achieved." <u>Linthicum</u>, 150 Ariz. at 331, 723 P.2d at 680.

16  The "evil mind" of the wrongdoer is what distinguishes conduct worthy of the

17  imposition of punitive damages, but "[i]n whatever way the requisite mental state is

18  expressed, the conduct must also be aggravated and outrageous." <u>Id.</u>; <u>see</u> <u>Rawlings</u>, 151 Ariz.

19  at 162, 726 P.2d at 578 (finding that punitive damages are appropriate in bad faith tort

20  actions "when, *and only when*, the facts establish that defendant's conduct was aggravated,

21  outrageous, malicious or fraudulent.").

22  While the question of whether to impose punitive damages is left to the jury if

23  reasonable evidence will support them, the evidence "must be more than slight and

24  inconclusive such as to border on conjecture." <u>Farr v. Transamerica Occidental Life Ins. Co.</u>,

25  145 Ariz. 1, 9, 699 P.2d 376, 384 (1984). Moreover, a plaintiff bears the burden of proving

26  that a defendant acted with the requisite "evil mind" by clear and convincing evidence.

27  <u>Linthicum</u>, 150 Ariz. At 332, 723 P.2d at 681.

28

**DISCUSSION**

**I.      Plaintiffs' Breach of Contract Claims**

Defendants argue that there is no genuine issue of material fact which would entitle Plaintiffs to prevail on their claim for breach of contract. (Doc. 43.) According to Defendants, Plaintiffs cannot establish that Defendants committed any breach, in that Defendants paid the full loss amount owed as determined by the appraisal, paid approximately 16 months of ALE Benefits, and were not required to pay any amount under the BOL Provision. (Id.)

Specifically as to Plaintiff's allegation that Defendants did not pay the full amount of ALE Benefits owed, Defendants assert that the language of the policy required only that Defendants pay ALE Benefits for the time which would have reasonably been required to repair Plaintiffs' home, in this case approximately 5 months. (Id.) Thus, according to Defendants, because they paid approximately 16 months of ALE Benefits, their duties under the contract were fully performed despite that Plaintiffs' home was not fully repaired by the time Defendants terminated the ALE Benefits. (Id.)

Plaintiffs do not dispute that Defendants paid ALE Benefits until shortly after the appraisal. (Doc. 51 ¶ 41.) Plaintiffs argue that Defendants nevertheless breached the policy by failing to pay ALE Benefits until the home was fully repaired. (Doc. 50.) Plaintiffs' interpretation of the policy language is thus that Defendants were required to provide ALE Benefits up to and until their home was once again fit for habitation, in this case a date some several months after Defendants had already terminated the benefits. (Id.)

After consideration of the parties' positions, the Court finds that Defendants' motion for summary judgment on this particular claim must be denied. As the parties dispute not the facts, but the construction of the policy language, this Court must determine as a matter of law which construction controls. Here, the policy provided that Defendants would pay ALE Benefits to cover the "necessary increase in cost you incur to maintain your standard of living . . . . limited to incurred costs for the shortest of: (a) the time required to repair or replace the premises; (b) the time required for your household to settle elsewhere; or © 24 months."

1    (Doc. 51-14.)

2        Interpreting the plain language and ordinary meaning of this provision, the Court finds

3    that it is reasonably susceptible to either Plaintiffs' or Defendants' interpretations. That is,

4    the "time required to repair or replace the premises" could be read to mean either: (1) that

5    Defendants were obligated to pay ALE Benefits until such time as Plaintiffs' home was

6    actually repaired or replaced; or (2) that Defendants were obligated to pay the benefits only

7    for so long a period of time as was reasonably estimated *would be* required to repair or

8    replace the home.

9        Upon reading this "repair or replace" time provision together with the homeowner's

10   policy as a whole, however, Defendants' construction loses credibility. Particularly when this

11   provision is taken in conjunction with the appraisal provision of the policy, it is clear that

12   Defendants explicitly contemplated the possibility that the insurer and an insured might

13   disagree as to exactly what would be required to repair or replace the home. In the event of

14   such a disagreement, the insured has the right to insist on appraisal to determine the amount

15   of loss – a step which can add considerable time to the claims adjustment process, thereby

16   prolonging the time in which the insured's home remains uninhabitable. Essentially, it makes

17   little sense for Defendants to allow an insured to dispute Defendants' evaluation of exactly

18   what kind of repair might be necessary, while at the same time obliquely preventing the

19   insured from exercising that option for fear that the delay in repair to their home would leave

20   them prematurely without ALE Benefits.

21       The Court finds that the more consistent interpretation of the policy language is that

22   which is forwarded by Plaintiffs, specifically that Defendants were obligated to pay ALE

23   Benefits up until such time as Plaintiffs' home was once again fit for habitation (though

24   limited in any event to 24 months). This is also the interpretation which construes the

25   ambiguity in favor of the insured, as required under Arizona law. Therefore, the Court finds

26   that Defendants were obligated to pay ALE Benefits up to the time that their home was once

27   again fit for habitation, limited to 24 months. Accordingly, the Court will deny Defendants'

28   motion for summary judgment for this aspect of Plaintiffs' breach of contract claim.

1      As to Plaintiffs' allegation that money is owed under the BOL Provision, Defendants

2  assert that Plaintiffs' claim fails because the appraisal award encompassed any code upgrade

3  issues and thus precludes Plaintiffs from re-litigating this issue. (Id.) In support of this

4  defense, Defendants cite to the Appraisal Report of Plaintiffs' appraiser Joseph Berger, in

5  which Berger recommended Plaintiffs' house be completely rebuilt rather than repaired.

6  (Doc. 44-1.) In this report, Berger wrote: "Based on multiple damage issues exposed by

7  selective demolition and multiple code issues including, but not limited to the fact that the

8  current setbacks are no longer allowed under current code [ . . . ], repair is not a cost-effective

9  option." (Id.)

10      Defendant assert that this language shows that the appraisal decision either explicitly

11  included any additional costs needed to address code upgrade issues, or at least shows that

12  this issue could have been raised by Plaintiffs as part of the appraisal process, and thus that

13  they are estopped by claim preclusion or issue preclusion from raising the issue here. (Doc.

14  44.) Plaintiffs respond to this argument by disputing whether code issues were indeed

15  considered by the appraisal panel. (Doc. 50.)

16      Notably absent from Plaintiffs' Response, Statement of Facts, and supporting

17  documents, however, is any explanation as to exactly what additional repairs Plaintiffs

18  believe were necessitated by building codes or laws. Nowhere in Plaintiffs' 53-page

19  "Statement of Facts and Contravening Statement of Facts" do Plaintiffs offer any explanation

20  of what, if any, code upgrades were made to the home. While it does appear from the record

21  that several additions were made to the home, including an elevator and a fire suppression

22  system, there is no indication that these additions were covered under the BOL Provision.

23  Plaintiffs thus fail to direct the Court to any evidence to which it could look in evaluating

24  whether Defendants were obligated to pay anything under the BOL Provision.

25      The Court finds that Plaintiffs' thus have failed to assert sufficient facts from which

26  a reasonable jury could find that Defendants breached the BOL Provision of the contract. As

27  such, there is no genuine issue of material fact as to this aspect of Plaintiffs' Breach of

28  Contract claim, and summary judgment in favor of Defendants is appropriate.

**II.    Plaintiffs' Bad Faith Claim**

Defendants next assert that Plaintiffs' bad faith claim is also subject to summary judgment. (Doc. 43.) First, according to Defendants, Plaintiffs' cannot have a valid bad faith claim under the policy unless they first have a valid claim for breach. (Id.) The Court notes that this contention is directly and unambiguously contradicted by Arizona case law. See Deese, 172 Ariz. at 508, 838 P.2d at 1269 ("breach of an express covenant is not a necessary prerequisite to an action for bad faith."). Furthermore, pursuant to the Court's finding in Section I above, Plaintiffs' breach of contract claim remains.

Defendants next argue that even if Plaintiffs' breach of contract claim survives, Plaintiffs' have failed to assert sufficient facts in support of the bad faith claim to withstand summary judgment. (Doc. 43.) Defendants assert that "there can be no liability for bad faith if the insurer's actions (even if ultimately proven wrong) are 'fairly debatable.'" (Doc. 43 at 13.) The Court notes that Defendants slightly distort the cited case, Trus Joist Corp., in which the court stated, "[w]here an insurer acts reasonably, there can be no bad faith." 153 Ariz. at 104, 735 P.2d at 134. More damaging to Defendants' legal position, however, is Zilisch, in which the court explicitly stated:

> while fair debatability is a necessary condition to avoid a claim of bad faith, it is not always a sufficient condition. The appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable.

196 Ariz. at 238, 995 P.2d at 280. Moreover, an insurer's belief that its actions were fairly debatable is a question of fact for the jury. Id.

Here, Plaintiffs' allege that Defendants committed bad faith in adjusting Plaintiffs' claims by acting unreasonably toward Plaintiffs in regards to prompt and adequate investigation, evaluation, and processing of the claim, and that Defendants knew that their conduct was unreasonable. (Doc. 50.) In support of their claims, Plaintiffs cite to deposition testimony purporting to show that Defendants unreasonably evaluated Plaintiffs' loss by insisting that the home could be repaired instead of rebuilt. (Doc. 51-1 at 20-23; Doc. 51-4

1    at 38-45.)

2       Plaintiffs cite also to affidavit and deposition testimony purporting to show that

3 Defendants acted unreasonably by repeatedly and prematurely warning Plaintiffs that their

4 ALE Benefits would be terminated, in an attempt to compel Plaintiffs to accept Defendants'

5 lower evaluation of the claim. (Doc. 51-1 at Doc. 51-3 at 2-6.) Similarly, Plaintiffs assert that

6 Defendants actions in terminating ALE Benefits prior to completion of Plaintiffs' home was

7 also unreasonable, and amounted to a retaliation against Plaintiffs for pursuing appraisal.

8 (Doc. 51-1 at 24-30; Doc. 51-4 at 86.)

9       The Court notes that Defendants dispute these facts, and the Court does not weigh the

10 sufficiency of the evidence. After taking account of all disputed and undisputed facts, and

11 making all reasonable inferences from those facts in favor of Plaintiffs, however, the Court

12 finds that Plaintiffs have met their burden of raising a genuine dispute of material fact

13 suitable for trial on their claim of bad faith. Because the jury must decide the question of

14 whether Defendants knowingly acted unreasonably toward Plaintiffs, and because Plaintiffs

15 have supported some measure of their claim with reasonably competent evidence, this Court

16 must deny Defendants' motion for summary judgment as to the bad faith claim.

17 **III.    Plaintiffs' Claim for Punitive Damages**

18       Defendants seek summary judgment also on Plaintiffs' claim for punitive damages.

19 (Doc. 43.) Defendants assert that even taking into account the disputed facts, Plaintiffs'

20 cannot meet the stringent requirements under Arizona law for the imposition of punitive

21 damages. (Id.) Plaintiffs counter that they have alleged sufficient circumstantial evidence

22 from which a jury could infer that Defendants acted with the requisite "evil mind," and that

23 Defendants' conduct was sufficiently outrageous. (Doc. 50.)

24       The Court finds that Plaintiffs fail to make a sufficient showing of facts which could

25 support imposition of punitive damages. Punitive damages are appropriate in bad faith cases

26 only when the facts establish by clear and convincing evidence that the defendant's conduct

27 was "aggravated, outrageous, malicious or fraudulent." See Rawlings, 151 Ariz. at 162, 726

28 P.2d at 578. The issue of whether to impose punitive damages will be submitted to the jury

1  for consideration only where a plaintiff has alleged reasonable evidence to support them, and

2  that evidence must be more than slight or inconclusive. See <u>Farr</u>, 145 Ariz. at 9, 699 P.2d at

3  384.

4        Here, while Plaintiffs allege Defendants acted with an evil mind discernible through

5  circumstantial evidence, they fail to allege any specific conduct of Defendants' which rises

6  to the level of aggravated, outrageous, malicious, or fraudulent. Plaintiffs have failed to

7  allege conduct beyond that required for commission of the tort of bad faith, and thus are not

8  entitled to have the issue of punitive damages presented to the jury. Therefore, the Court

9  finds that summary judgment in favor of Defendants on the issue of punitive damages is

10  appropriate.

11                                    **CONCLUSION**

12        Accordingly, for the reasons set forth above,

13        **IT IS HEREBY ORDERED DENYING** in part and granting in part Defendants'

14  Motion for Summary Judgment (Doc. 43).

15        **IT IS FURTHER ORDERED DENYING** Defendants' Motion for Summary

16  Judgment as to Plaintiffs' claim for breach of contract on the issue of non-payment of ALE

17  Benefits.

18        **IT IS FURTHER ORDERED GRANTING** Defendants' Motion for Summary

19  Judgment as to Plaintiffs' claim for breach of contract on the issue of non-payment of code

20  upgrade payments.

21        **IT IS FURTHER ORDERED DENYING** Defendants' Motion for Summary

22  Judgment as to Plaintiffs' claim for bad faith.

23        **IT IS FURTHER ORDERED GRANTING** Defendants' Motion for Summary

24  Judgment as to Plaintiffs' claim for punitive damages.

25        **IT IS FURTHER ORDERED** setting the Final Pretrial Conference for **November**

26  **19, 2012 at 2:00 p.m.** The deadline for the parties to file dispositive motions has passed.

27  This matter appearing ready for trial, a Final Pretrial Conference shall be held in Courtroom

28  605, Sandra Day O'Connor U.S. Federal Courthouse, 401 W. Washington St., Phoenix,

Arizona 85003. The attorneys who will be responsible for the trial of the case shall attend the Final Pretrial Conference. Counsel shall bring their calendars so that trial scheduling can be discussed.

**IT IS FURTHER ORDERED** that, if this case shall be tried to a jury, the attorneys who will be responsible for the trial of the lawsuit shall prepare and sign a <u>Proposed Pretrial Order</u> and submit it to the Court on **Friday, October 26, 2012.**

**IT IS FURTHER ORDERED** that the content of the Proposed Pretrial Order shall include, but not be limited to, that prescribed in the <u>Form of Pretrial Order</u> attached hereto. Statements made shall not be in the form of a question, but should be a concise narrative statement of each party's contention as to each uncontested and contested issue.

**IT IS FURTHER ORDERED** pursuant to Federal Rule of Civil Procedure 37© that the Court will not allow the parties to offer any exhibits, witnesses, or other information that were not previously disclosed in accordance with the provisions of this Order and/or the Federal Rules of Civil Procedure and/or not listed in the Proposed Pretrial Order, except for good cause.

**IT IS FURTHER ORDERED** directing the parties to exchange drafts of the Proposed Pretrial Order **no later than seven (7) days before the submission deadline**.

**IT IS FURTHER ORDERED** that the parties shall file and serve all motions in limine no later than **Friday, October 26, 2012.** Each motion in limine shall include the legal basis supporting it.  Responses to motions in limine are due **November 2, 2012.**  No replies will be permitted.  The attorneys for all parties shall come to the Final Pretrial Conference prepared to address the merits of all such motions.

**IT IS FURTHER ORDERED** directing the parties to complete the following tasks by the time of the filing of the Proposed Pretrial Order if they intend to try the case before a jury:

(1)     The parties shall <u>jointly</u> file a description of the case to be read to the jury.

(2)     The parties shall <u>jointly</u> file a proposed set of voir dire questions.  The voir dire questions shall be drafted in a neutral manner.  To the extent possible, the parties

1    shall stipulate to the proposed voir dire questions.  If the parties have any

2    disagreement about a particular question, the party or parties objecting shall state the

3    reason for their objection below the question.

4        (3)      The parties shall file a proposed set of <u>stipulated</u> jury instructions. The

5    instructions shall be accompanied by citations to legal authority.  If a party believes

6    that a proposed instruction is a correct statement of the law, but the facts will not

7    warrant the giving of the instructions, the party shall so state.  The party who believes

8    that the facts will not warrant the particular instruction shall provide an alternative

9    instruction with appropriate citations to legal authority.

10       (4)      Each party shall submit a form of verdict to be given to the jury at the end of

11   the trial.

12       **IT IS FURTHER ORDERED** directing the parties to submit their proposed joint

13   statement of the case, joint voir dire questions, stipulated jury instructions, and verdict forms.

14       **IT IS FURTHER ORDERED** that if the case will be tried to the Court, rather than

15   to a jury, <u>instead of</u> filing a Proposed Pretrial Order, each party shall submit proposed

16   findings of fact and conclusions of law by the same date the Proposed Pretrial Order is due.

17       **IT IS FURTHER ORDERED** that the parties shall keep the Court apprised of the

18   possibility of settlement and should settlement be reached, the parties shall file a Notice of

19   Settlement with the Clerk of the Court.

20       **IT IS FURTHER ORDERED** that this Court views compliance with the provisions

21   of this Order as critical to its case management responsibilities and the responsibilities of the

22   parties under Rule 1 of the Federal Rules of Civil Procedure.

23       DATED this 30th day of September, 2012.

24

25

26                           Stephen M. McNamee
                             Senior United States District Judge
27

28

- 14 -

1
2
3
4
5
6
7
8

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

9  ,                                    )  No. CV -PHX-SMM
                                        )
10              Plaintiff,              )  **PROPOSED   PRETRIAL   FORM   OF**
                                        )  **ORDER**
11  vs.                                 )
                                        )
12                                      )
                                        )
13  ,                                   )
                Defendant.              )
14                                      )
                                        )
15  _____)

16        Pursuant to the Scheduling Order, the following is the joint Proposed Final Pretrial

17  Order   to   be   considered   at   the   Final   Pretrial   Conference   set   for

18  _____, _____ .

19        A.  **COUNSEL FOR THE PARTIES**

20            (Include mailing address, office phone and fax numbers).

21            Plaintiff(s):

22            Defendant(s):

23        B.  **STATEMENT OF JURISDICTION**.

24            Cite the statute(s) which gives this Court jurisdiction.

25            (e.g., Jurisdiction in this case is based on diversity of citizenship under Title 28

26            U.S.C. §1332.)

27            Jurisdiction (is/is not) disputed.

28

(If jurisdiction is disputed, the party contesting jurisdiction shall set forth with specificity the bases for the objection.)

C.  **NATURE OF ACTION**.

Provide a concise statement of the type of case, the cause of the action, and the relief sought.

(e.g., - This is a products liability case wherein the plaintiff seeks damages for personal injuries sustained when he fell from the driver's seat of a forklift. The plaintiff contends that the forklift was defectively designed and manufactured by the defendant and that the defects were a producing cause of his injuries and damages.)

D.  **CONTENTIONS OF THE PARTIES**.

With respect to each count of the complaint, counterclaim or cross-claim, and to any defense, affirmative defense, or the rebuttal of a presumption where the burden of proof has shifted, the party having the burden of proof shall list the elements or standards that must be proved in order for the party to prevail on that claim or defense. Citation to relevant legal authority is required.

(e.g., In order to prevail on this products liability case, the plaintiff must prove the following elements . . . .

In order to defeat this products liability claim based on the statute of repose, the defendant must prove the following elements . . . .)

E.  **STIPULATIONS AND UNCONTESTED FACTS**

1. The following facts are admitted by the parties and require no proof:

2. The following facts, although not admitted, will not be contested at trial by evidence to the contrary:

- 2 -

**F.   CONTESTED ISSUES OF FACT AND LAW**

1. The following are the issues of fact to be tried and decided: (Each issue of fact must be stated separately and in specific terms. Each parties' contention as to each issue must be set forth with respect to each and every issue of fact). E.g., Issue # 1: Whether Plaintiff used due care.

> Plaintiff Contends: Plaintiff looked both ways before stepping into the street . . . .

> Defendant Contends: Plaintiff was chasing a ball and darted out into the street without looking . . . .

2. The following are the issues of law to be tried and determined: (Each issue of law must be stated separately and in specific terms. Each parties' contention as to each issue must be set forth with respect to each and every issue of law). E.g., Issue # 1: Whether Plaintiff's suit is barred by the doctrine of laches.

> Plaintiff Contends: . . .

> Defendant Contends: . . .

**G.   LIST OF WITNESSES**.

A jointly prepared list of witnesses and their respective addresses, identifying each as either plaintiff's or defendant's, and indicating whether a fact or expert witness, must accompany this proposed order. If a witness' address is unknown, it should be so stated. A brief statement as to the testimony of each witness must also be included. Additionally, the parties shall designate which witnesses (1) shall be called at trial, (2) may be called at trial, and (3) are unlikely to be called at trial.

Additionally, the parties shall include the following text in this portion of the Proposed Pretrial Order:

The parties understand that the Court has put them on notice that they are responsible for ensuring that the witnesses they want to put on the stand to testify

- 3 -

are subpoenaed to testify, regardless of whether the intended witness is listed as a witness for the plaintiff(s) or the defendant(s). Simply because a party lists a witness does not mean that the witness will be called. Therefore, a party should not rely on the listing of a witness by the opposing party as an indication that the witness will be called. To the extent possible, the parties shall stipulate to the witnesses who will be called to testify.

H. **LIST OF EXHIBITS**.

1. The following exhibits are admissible in evidence and may be marked in evidence by the Clerk:

a. Plaintiff's Exhibits:

b. Defendant's Exhibits:

2. As to the following exhibits, the parties have reached the following stipulations:

a. Plaintiff's Exhibits:

b. Defendant's Exhibits:

3. As to the following exhibits, the party against whom the exhibit is to be offered objects to the admission of the exhibit and offers the objection stated beneath:

a. Plaintiff's Exhibits:

(E.g., City Hospital records of Plaintiff from March 6, 1985 through March 22, 1985. Defendant objects for lack of foundation because . . . . (the objection must specify why there is a lack of foundation)).

b. Defendant's Exhibits:

(E.g., Payroll records of Plaintiff's employer which evidences payment of Plaintiff's salary during hospitalization and recovery. Plaintiff objects on the ground of relevance and materiality because (the objection must specify why there is a relevancy or materiality problem)).

- 4 -

I.   **DEPOSITIONS TO BE OFFERED**.

The parties shall list the depositions to be used at trial. The portions to be read at trial shall be identified by page and line number. Counsel should note objections to deposition testimony by writing the objection in the margins of that portion of the text of the deposition to which the objection is made. Moreover, these objections shall be explained in this portion of the Proposed Pretrial Order. As is the Court's practice at trial, it is <u>not sufficient</u> for an objecting party to simply state perfunctory grounds for an objection (e.g., "hearsay" or "lack of foundation") contained in the Proposed Pretrial Order. Each party must explain the basis for each perfunctory objection (e.g., <u>why</u> it is hearsay, <u>why</u> it lacks foundation, <u>why</u> it is irrelevant).

J.   **MOTIONS IN LIMINE**. Motions in limine shall be served, filed, and responded to in accordance with the instructions contained in the Order Setting Final Pretrial Conference.

K.   **LIST OF ANY PENDING MOTIONS**

L.   **PROBABLE LENGTH OF TRIAL**

M.   **JURY DEMAND** - A jury trial (has) (has not) been requested. If a jury trial was requested, (indicate the appropriate selection):

1. the parties stipulate the request was timely and properly made;

2. the (Plaintiff or Defendant) contends the request was untimely made because: (explain why request was untimely); or

3. the (Plaintiff or Defendant contends that although the request for trial by jury was timely, the request is improper as a matter of law because: (indicate the legal basis why a jury trial would be improper).

For a Bench Trial

N-1. **PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** shall be filed and served by each party in accordance with the instructions contained

- 5 -

1  in the Order Setting Final Pretrial Conference.

2  <u>For a Jury Trial</u>

3  N-2. **STIPULATED JURY INSTRUCTIONS, PROPOSED VOIR DIRE**

4  **QUESTIONS, AND PROPOSED FORMS OF VERDICT** shall be filed in

5  accordance with the instructions contained in the Order Setting Final Pretrial

6  Conference.

7  O.  **CERTIFICATIONS**. The undersigned counsel for each of the parties in this

8  action do hereby certify and acknowledge the following:

9  1. All discovery has been completed.

10  2. The identity of each witness has been disclosed to opposing counsel.

11  3. Each exhibit listed herein (a) is in existence; (b) is numbered; and (c) has been

12  disclosed and shown to opposing counsel.

13  4. The parties have complied in all respects with the mandates of the Court's Rule

14  16 Order and Order Setting Final Pretrial Conference.

15  5. [Unless otherwise previously ordered to the contrary], the parties have made

16  all of the disclosures required by the Federal Rules of Civil Procedure.

17  APPROVED AS TO FORM AND CONTENT:

18  _____   _____

19  Attorney for Plaintiff                    Attorney for Defendant

20  Based on the foregoing,

21  **IT IS ORDERED** that this Proposed Pretrial Order jointly submitted by the parties

22  is hereby **APPROVED** and is thereby **ADOPTED** as the official Pretrial Order of this Court.

23  DATED this _____ day of _____, _____.

24

25  _____

26  Stephen M. McNamee
   Senior United States District Judge

27

28  - 6 -